[No. 9879.   Department One.   August 14, 1912.]

CARL NELSON, *Respondent*, v. IMPERIAL TRADING COMPANY, *Appellant*.[1]

SALES—CONTRACT—BREACH—DELAY IN PERFORMANCE.   Where an order for two tons of turkeys to arrive at Spokane on November 23d was accepted, the seller is bound to ship the same so that the whole lot will arrive at Spokane during business hours on the 23d; and where they were shipped in two lots so that the first lot could not arrive until the night of the 23d, the buyer is justified in rejecting them.

SAME—WAIVER OF BREACH.   Where two tons of turkeys were ordered to arrive at Spokane on November 23d and they were shipped in two lots so that the first lot could not arrive until the night of the 23d, the buyer did not waive the breach where, upon being notified of the arrival of the first lot, he examined and immediately rejected it, without assigning any special reason.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered June 10, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract.   Reversed.

*Danson, Williams & Danson* (*George D. Lantz*, of counsel), for appellant.

*Charles P. Lund*, for respondent.

CROW, J.—Action by Carl Nelson against Imperial Trading Company, a corporation, to recover damages arising from defendant's alleged breach of its contract of purchase. From a verdict and judgment in plaintiff's favor, the defendant has appealed.

Appellant is engaged in the wholesale fish and poultry business in Spokane.   Respondent resides in Hutchinson, Kansas.   The alleged contract of sale was made by the following telegrams which passed between the parties:

"Spokane, Washington, November 16th, Carl Nelson Hutchinson, Kansas.   Can you ship three tons fancy dry

[1]Reported in 125 Pac. 777.

picked turkeys 16 Hutchinson? Answer. Imperial Trading Company."

"November 16-07. Imperial Trading Company, Spokane, Wash. Can ship two tons dry picked turkeys 17c. Answer immediately. Carl Nelson."

"Spokane, Wash., November 16-07, Carl Nelson, Hutchinson, Kansas. Ship two tons fancy dry picked turkeys 17, arrive Spokane 23d. Acknowledge. Imperial Trading Company."

"November 17-07, Imperial Trading Company, Spokane, Washington. All right. Will ship C. O. D. Weather warm, shall I use ice? Carl Nelson."

"November 18. Carl Nelson, Hutchinson, Kansas. Ship without ice. Imperial Trading Company."

Appellant contends that instead of being fancy dry picked, many of the turkeys which respondent shipped were of inferior quality, that they did not reach Spokane within the contracted period, and that excessive shipments were made. It refused to accept the shipments. A portion of the turkeys which subsequently spoiled were condemned and destroyed. The remainder were stored, and later sold for less than the contract price. Respondent claimed damages for express charges, storage charges, loss of turkeys destroyed, and depreciation in price.

The undisputed evidence shows that, after being killed and dressed, turkeys should be permitted to cool for twenty-four hours before shipment; that when respondent received the order he had only 2,000 pounds of live turkeys on hand; that he killed and dressed these on November 18, permitted them to cool, and shipped them about 6 o'clock on the afternoon of November 19; that after receiving the order, he purchased about 3,000 pounds of live turkeys which he killed and dressed on November 19, permitted them to cool for twenty-four hours, and shipped them about six o'clock on the afternoon of November 20. These two shipments reached Spokane during the night of November 23d, and during the night of November 24th, practically one and two days later than was contemplated by the contract. The first shipment amounted

to 1,920 pounds, a little less than half the order. The second amounted to 3,100 pounds, which added to the first, exceeded the entire order by more than half a ton. Appellant contended, and introduced evidence to show, that it needed the turkeys to supply retail dealers for the Thanksgiving trade; that to supply this trade it was necessary to receive the stock not later than during business hours on Saturday, November 23d; that both shipments arrived too late for that purpose; and that appellant was unable to fill its orders. Appellant introduced further evidence to show that the turkeys were of an inferior quality and not suitable for appellant's trade; while respondent's evidence was that when shipped, the turkeys were all of the quality ordered, well packed, and in good condition.

Appellant's principal contention is that the trial court erred in denying its challenge to the sufficiency of the evidence, and its motion for judgment notwithstanding the verdict. It insists that respondent's duty was to deliver an entire shipment of two tons at Spokane, not later than during business hours on November 23d; that he failed to do so; that the shipments were made too late; that he finally shipped more turkeys than were ordered; that the turkeys were of an inferior quality; and that by reason of any one of these breaches, appellant was entitled to reject the entire shipment. Respondent insists that appellant's only assigned reason for rejecting the turkeys, was that they were of an inferior quality; that by assigning that exclusive reason, it waived other objections now urged; that by their verdict the jury found the turkeys were of the quality ordered; and that the judgment should be affirmed.

In considering appellant's challenge to the sufficiency of the evidence, and its motion for judgment notwithstanding the verdict, we proceed upon the theory that the turkeys were of the quality ordered. The evidence on that issue was conflicting, and was resolved by the jury in respondent's favor. It is conceded, and respondent testified, that the first

shipment was made from Hutchinson on November 19, about 6 p. m., that the second was made on November 20 about 6 p. m., and that it would require at least four nights and three days for transportation to Spokane. Some question is raised as to whether delivery was to be made in Hutchinson or in Spokane. Appellant contends that delivery was to be made in Spokane; that it was respondent's duty to deliver the entire shipment there not later than during business hours on Saturday, November 23d; that time was a material and vital element of the contract; and that appellant was entitled to reject the entire shipment for respondent's failure to make a prompt delivery, as well as for other reasons.

We hold the contract contemplated that the delivery was to be made by shipment at Hutchinson, in time for arrival in Spokane not later than November 23d, and during business hours of that day. Appellant was not advised of the arrival of the first shipment in Spokane until the morning of Sunday, November 24th.

"In the absence of any provision in the contract fixing a place for delivery the general rule is that the delivery shall be made at the place where the goods are at the time of the sale, and this will usually be the place of business of the seller, or of manufacture, or of shipment." 35 Cyc. 172.

"Ordinarily a delivery of goods by the seller to the carrier designated by the purchaser, or to one usually employed in the transportation of goods from the place of the seller to that of the. purchaser, is a delivery to the purchaser, the carrier becoming the agent or bailee of the buyer." 35 Cyc. 193, and cases cited.

The first shipment could and did reach Spokane late during the night of November 23d. The second was not made from Hutchinson until November 20th at 6 p. m., too late, according to respondent's testimony, to reach Spokane prior to November 24th. Respondent thus failed to comply with a material stipulation of his contract in that he failed to make prompt shipments, and unless appellant has waived this breach, respondent cannot recover. We are unable to

find any such waiver. Although appellant insisted the tur-
keys were of inferior quality, there was no evidence that it
assigned that fact as its exclusive reason for rejecting them.
Appellant inspected the first shipment on Sunday morning
after its arrival in Spokane, and immediately rejected it.
At that time appellant did not waive, or show any intention
to waive, any other breach of the contract. The only theory
upon which any waiver can be claimed is kindred to that of
estoppel.

"The question of waiver is mainly a question of intention,
which lies at the foundation of the doctrine. Waiver must
be manifested in some unequivocal manner, and to operate
as such it must in all cases be intentional. There can be no
waiver unless so intended by one party and so understood by
the other, or one party has so acted as to mislead the other
and is estopped thereby. . . . Mere silence at a time when
there is no occasion to speak is not a waiver, nor evidence
from which waiver may be inferred; especially where such
silence is unaccompanied by any act calculated to mislead."
40 Cyc. 261, 263.

No facts constituting an estoppel or disclosing an inten-
tional waiver by appellant are shown in this action. Appel-
lant examined the first shipment and immediately rejected it,
without assigning any special reason. The second shipment
was not examined. There is no evidence that appellant at
any time advised respondent, or that respondent knew, the
shipment was rejected because of inferior quality. Appellant
was entitled to have the entire order shipped from Hutchin-
son in time to arrive in Spokane not later than November
23d during business hours. The greater portion of it was
shipped too late for arrival within that time. The fact that
respondent did not have all the stock on hand when the order
was made and that he had to purchase some of it does not
excuse him. He should not have contracted if he could not
deliver within the stipulated time. He testified that, on
November 24th or 25th, he received a telegram from the ex-
press agent at Spokane advising him that the shipment had

been rejected, but he failed to state that any reason appellant may have assigned was communicated to him. He further testified, that he ordered the express company to place the turkeys in storage; that after the agent informed him this had been done, he let the matter rest until February, 1908, when he made a trip to Spokane and endeavored but failed to effect a settlement; that he then asked appellant why the shipment had been refused, but that it had no particular excuse to offer. The record fails to show that any specific reason for rejecting the shipments was communicated to respondent by appellant or through any other person. No act of appellant has been shown constituting a waiver of any sufficient reason it had for rejecting the shipment, or which will estop it from asserting the defense of late shipment.

Appellant's challenge to the sufficiency of the evidence should have been sustained. The judgment is reversed, and the cause remanded with instructions to dismiss.

GOSE, PARKER, and CHADWICK, JJ., concur.